## MATTER OF MORCOS

### In Deportation Proceedings

### A-13923701

### *Decided by Board July 26, 1966*

(1) Notwithstanding that respondent's voluntary removal from the United States in 1938 pursuant to section 23 of the Immigration Act of February 5, 1917, as amended, terminated, as a matter of law, his status as a lawful permanent resident, his abandonment of permanent residence is established, as a matter of fact, since following removal he married, was employed, and lived abroad with his wife and child; he made no effort to return to the U.S. until 1944; and his removal request made in 1938 because he had fallen in need of public aid and thought he would be better off to go home belies his presently advanced self-serving claim that he did not intend to abandon his residence in 1938; therefore, he was ineligible for the nonquota immigrant visa as a returning resident which he acquired deliberately withholding from the consul information concerning his removal and with which he gainel entry in 1965, and he is deportable under section 241(a)(1) of the Immigration and Nationality Act because he was excludable at entry under section 211(a)(3) of the Act.

(2) Permission to reapply is not warranted as a matter of discretion where respondent has been absent from the United States for 27 years after removal at government expense pursuant to his request; when seeking the visa with which he last gained entry, he deliberately withheld essential information from the consular officer; his wife and child reside abroad, and there appears no reason why he cannot return to the same employment abroad he had prior to entry (he has same employer here).

CHARGES:

Order: Act of 1952—Section 241(a)(1) [8 U.S.C. 1251]—Excludable by law existing at time of entry [section 212(a)(17); 8 U.S.C. 1182]—Removed from the United States—No consent to reapply for admission.

Act of 1952—Section 241(a)(1) [8 U.S.C. 1251]—Excludable by law existing at time of entry [section 212(a)(19); 8 U.S.C. 1182]—Visa procured by fraud or willful misrepresentation

Act of 1952—Section 241(a)(1) [8 U.S.C. 1251]—Excludable by law existing at time of entry [section 211(a)(3); 8 U.S.C. 1181]—Not nonquota immigrant as specified in visa.

On January 10, 1966, the special inquiry officer denied the respondent's application for permission to reapply for admission to the United States, *nunc pro tunc*, as of the date of his last entry on January 4, 1965; granted his alternative request for voluntary departure; and provided for his deportation from the United States to Australia, alternatively to the United Arab Republic (Egypt), on the first and third charges stated in the order to show cause, in the event of his failure to so depart. The appeal from that decision, which brings the case before this Board for consideration, will be dismissed.

The record relates to a 56-year-old married alien male, a native and citizen of the United Arab Republic, who was originally admitted to the United States for permanent residence on July 23, 1929. On March 28, 1938, he applied for removal from the United States to Egypt as an alien in distress or in need of public aid from causes arising subsequent to entry, pursuant to section 23 of the Immigration Act of February 5, 1917 (former 8 U.S.C. 102), as amended by the Act of May 14, 1937 (50 Stat. 164). In said application, respondent stated that he had received public aid from the State Relief Administration, and a representative of that agency certified that the respondent had received food, lodging and clothing from February 1, 1935 until November 28, 1938 in the amount of $168.91. In a sworn interrogation in connection with the removal application, taken on March 28, 1938, the respondent stated that he was requesting removal to his native country because: "I am broke, can't get a job, have been on relief and I think that I can go home to Egypt and be much better off than I am here.". On April 18, 1938, the application for removal was granted and the respondent was removed from the United States on July 23, 1938. Nevertheless, he was admitted to the United States on January 14, 1965, his last entry, upon the presentation of a nonquota immigrant visa issued to him by the United States Consul in Cairo, Egypt, on January 4, 1965, as a returning resident.

The pertinent portion of section 23 of the Immigration Act of February 5, 1917, as amended by the Act of May 14, 1937, which was in effect at the time of the respondent's removal from the United States, provided as follows:

That the Commissioner of Immigration and Nationality * * * shall have authority to enter into contract for the support and relief of such aliens as may fall into distress or need public aid, and to remove to their native country, or to the country from whence they came, or to the country of which they are citizens or subjects, at any time after entry, at the expense of the appropriations for the enforcement of this Act, such as fall into distress or need public

aid from causes arising subsequent to their entry and are desirous of being so removed, *but any person thus removed shall forever be ineligible for readmission except upon the approval of the Secretary of State and the Attorney General.* (Emphasis supplied.)

Although the requirement of the approval of the Secretary of State has been eliminated by section 250 of the Immigration and Nationality Act of 1952 (8 U.S.C. 1260), the provision rendering the removed alien ineligible for a visa and for admission to the United States, except with the prior approval of the Attorney General, has been retained. Moreover, section 212(a)(17) of the Immigration and Nationality Act specifically renders inadmissible an alien who has been removed pursuant to this or *any prior Act* unless he has received the required consent from the Attorney General to reapply for admission to the United States.

The respondent initially stated that he did not know whether he had obtained permission to return to the United States following his removal, *supra.* Subsequently, however, he acknowledged that he had never applied for permission to return because he did not know it was necessary. He thereafter stated that he had never received permission from the Attorney General to return to the United States after his removal.

The foregoing facts of record bring the respondent's case squarely within the scope of the statutory provisions hereinbefore discussed, which are controlling in this case. Accordingly, we concur in the special inquiry officer's conclusion that the respondent is deportable on the first charge stated in the order to show cause. We find unavailing the respondent's claim that if, under the same set of facts, he were to apply for removal from the United States today his application would not be granted. It is established and uncontested that he did make such an application, it was granted and he was removed. These facts speak for themselves; they bring the respondent's case clearly within statutory provisions rendering him inadmissible to and deportable from the United States, and there our inquiry ends. There has been no substantial change in the law from the time of the respondent's application for removal to date.

The special inquiry officer has held that the second charge of deportability placed against the respondent is not sustained. We concur in said official's conclusion in this respect, for the reasons stated in his opinion. Further discussion of this aspect of the case is unnecessary, except to make it clear that this factor has no bearing whatsoever on the decision in this case.

The special inquiry officer has held that the respondent's voluntary removal from the United States in 1938, in and of itself, effected extinguishment of his status as a lawful permanent resident alien, as a matter of law. We agree with that holding, for the simple reason that the clear and unambiguous wording of the controlling statutory provisions, as discussed in connection with the first charge of deportability, leave no room for any other conclusion, legal or logical. Accordingly, respondent was ineligible for a visa as a returning resident when he came back to this country in 1965. Consequently, he was not entitled to status as a nonquota Immigrant and was subject to exclusion under section 211(a)(3) of the Immigration and Nationality Act at that time. He is, therefore, subject to deportation on the third charge contained in the order to show cause.

Also, contrary to the contentions of counsel, the respondent's abandonment of his status as a lawful permanent resident is established by the record, as a matter of fact. He was removed from the United States at the expense of the government of this country *on his own request* on July 23, 1938, because: "I am broke, can't get a job, have been on relief and I think that I can go home to Egypt and be much better off than I am here." We think this statement, made at the time his application for removal was made, completely belies his present self-serving claim, advanced for the first time 27 years afterwards and when he is obviously seeking to overcome the effect of his much earlier action.

In addition, after his voluntary removal to Egypt in 1938, the respondent married in that country, lived there with his wife and daughter, and was employed there. He made no move to return to the United States until 1944—a period of six years—when he filed a preliminary visa application. These facts alone are sufficient to rebut the present claim that he did not intend to abandon his domicile in 1938. Coupled with the statement he made at that time, *supra*, the conclusion is irrefutable that he then abandoned his status as a lawful permanent resident, factually as well as legally.

Respondent's reliance upon the cases of *Tejeda v. Immigration and Naturalization Service* (346 F.2d 389) and *McLeod v. Peterson* (283 F.2d 180) is misplaced. In the former, there was a possibility that the alien's rights were prejudiced by incorrect advice on the part of a United States Consul in the Philippines who was aware of all the pertinent facts. In the latter, the alien's rights were adversely affected by his departure to Canada on the advice of an

officer of the Immigration and Naturalization Service. Here, however, the alien's present predicament is traceable clearly and solely to his own action in requesting voluntary removal from the United States.

The United States Consul's action, long thereafter, in issuing the respondent a visa is of no assistance to him. In the first place, as we have hereinbefore indicated, the respondent was not entitled to that visa. Second, the mistakes of its officers are not binding on the government (*United States ex rel. Lapides* v. *Watkins*, 165 F.2d 1017). Third, it is established that the visa issuing officer was not aware of the respondent's prior removal from the United States. Finally, in this connection, the respondent has admitted that he did not inform the Consul of his "removal" because: "I believed it would be held against me" (Ex. 4, p. 6).

The foregoing definitely demonstrates that we are not here confronted with a situation involving a gross miscarriage of justice resulting from actions of government officials. Rather, the respondent's present problem has been brought on entirely by his own voluntary acts and/or deliberate withholding of essential information.

As pointed out by the special inquiry officer, and for the reasons set forth above, the respondent is inadmissible to the United States because the nonquota visa which he presented on arrival was invalid. Therefore, he is not admissible to the United States otherwise than as an alien who lacks merely permission to apply for admission after "removal." Therefore, under the law, he cannot be granted such permission.

In addition, such relief is not warranted as a matter of discretion. Respondent's wife and child are in Egypt. He has been absent from this country for a period of 27 years following his request to be removed herefrom at the expense of the United States Government. When seeking to obtain the visa which he was eventually issued and used to gain his last entry, respondent deliberately withheld a vital fact from the United States Consul. There appears to be no reason why he cannot return to the same employment he had for six years prior to his last entry—he has the same employer here.

The special inquiry officer has granted the respondent's alternative request for voluntary departure, and the record before us supports said official's action in this respect. The respondent's application for temporary withholding of deportation to Egypt was abandoned. The question of whether or not respondent can qualify for preference status, raised after the conclusion of oral argument, is

not material to the issues involved here and, in any event, is not properly before us for consideration. No other points having been raised, and in view of the foregoing, the special inquiry officer's decision is approved.

ORDER: It is ordered that the appeal be and the same is hereby dismissed.